JEFFERSON PLANTING & MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9600.   Promulgated October 17, 1927.

Actual cash values placed by respondent on land, plantation improvements and sugar factory at the time of acquisition in 1903 by petitioner in exchange for its capital stock approved.

*George C. H. Kernion, Esq.,* for the petitioner.
*M. N. Fisher, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes of $10,269.02, $17,086.65, and $1,661.01 for the years 1917, 1918, and 1919, respectively. The deficiencies result from the respondent excluding from petitioner's invested capital

for each year an amount of $257,230.17, which the petitioner contends represented paid-in surplus, at the time of its organization in January, 1903.

### FINDINGS OF FACT.

In December, 1902, E. Godfrey Robichaux purchased for $120,000 from the Willswood Planting & Refining Co. a sugar plantation, known as the Willswood Plantation, consisting of 3,700 acres of land with certain plantation improvements and a sugar factory of an estimated capacity of 800 tons, located about 10 miles from New Orleans, La. Thereafter, before the end of the year, he sold a one-fifth interest in the plantation to each of four other parties for $24,000 cash or a total of $96,000, retaining a one-fifth interest.

In January, 1903, Robichaux and his associates formed the petitioner corporation, which was incorporated under the laws of Louisiana with a capital stock of $120,000. The incorporators then on January 21, 1903, transferred their interests in the Willswood Plantation to the petitioner for its stock amounting to $120,000 par value. In November, 1904, Robichaux and two of the stockholders bought the stock of the two other stockholders on the basis of $325 for each $100 originally invested.

### OPINION.

TRAMMELL: The petitioner contends that in January, 1903, when it exchanged its capital stock of the par value of $120,000 for the assets set out in the findings of fact those assets had an actual cash value of $377,230.17, or a value of $257,230.17 in excess of the par value of the stock issued therefor, which amount it contends represents a paid-in surplus and that it is entitled to have the amount included in its invested capital, for the years 1917, 1918, and 1919. In an audit of the petitioner's returns for these years, the respondent excluded the amount in excess of the par value of the stock from invested capital on the ground that the petitioner had failed to establish that the assets acquired at the time of their acquisition by the corporation had any value in excess of the par value of stock issued therefor, and allocated to the assets values in the following amounts:

| | |
|---|---:|
| Depreciable assets | $79,600 |
| Mules | 12,500 |
| Seeds | 1,000 |
| Land | 26,900 |
| | 120,000 |

The keystone upon which petitioner rests its contention for the paid-in surplus of $257,230.17 is a retrospective appraisal made in

11340°—28——57

1924 of its assets as of January 21, 1903, concerning which appraisal there was considerable testimony, but which appraisal was not introduced in evidence. The person in charge of making the appraisal testified with respect to the manner of making it and to reproduction cost of the various assets less an estimated amount for depreciation as shown thereon, but did not express an opinion as to the correctness of the figures, or as to the value of the assets at the time acquired.

In our opinion the evidence relating to the value on January 21, 1903, of the sugar factory and plantation improvements is not sufficient to sustain petitioner's contentions. We know nothing as to what the plantation improvements consisted of, when they were made, how long they had been in use, the amount of depreciation actually sustained, the purpose for which used, or their condition as of January 21, 1903.

While the person who had charge of making the appraisal expressed no opinion as to the values of the assets, he did testify as to the sales of land similarly situated and comparable with the land acquired by the petitioner. This testimony would tend to show that the land in controversy might have been worth at least $35 an acre, but actual transactions involving the land in controversy is stronger evidence and carries more weight than transactions relating to other lands. The particular land in controversy was purchased only a few weeks prior to the time it was turned in to the corporation for stock. The four other individuals bought their interests on the same basis that Robichaux bought the assets.

The person who sold the assets to Robichaux testified that he secured the best price obtainable; that if he could have gotten a better price he would have done so. That transaction was between persons dealing at arms' length who were familiar with the property and was at approximately the time when the corporation acquired the property.

From the evidence in the record it would appear that the sale of the stock in November 1904 at $325 per share represented increased or appreciated values which did not exist in December 1902 or in January, 1903.

We are unable to find from the evidence submitted that the properties received by the petitioner in exchange for its stock had at the time of their acquisition any greater value than that placed on them by the respondent.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MORRIS and LITTLETON.